**IN THE UNITED STATES DISTRICT COURT FOR THE**

**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **1) UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **-vs-** | ) | **No. CIV-26-_____** |
| | ) | |
| **2)** Defendant No. 1: | ) | |
| **950 SW 59TH STREET,** | ) | |
| **OKLAHOMA CITY, OKLAHOMA 73109,** | ) | |
| | ) | |
| **3)** Defendant No. 2: | ) | |
| **APPROXIMATELY $20,161.00 IN** | ) | |
| **UNITED STATES CURRENCY,** | ) | |
| | ) | |
| **4)** Defendant No. 3: | ) | |
| **A SIG SAUER, MODEL P365, 9MM** | ) | |
| **CALIBER HANDGUN, BEARING** | ) | |
| **SERIAL NUMBER 66B194635,** | ) | |
| | ) | |
| **5)** Defendant No. 4: | ) | |
| **A SPRINGFIELD, MODEL XD9, 9MM** | ) | |
| **CALIBER HANDGUN, BEARING** | ) | |
| **SERIAL NUMBER MG937535,** | ) | |
| | ) | |
| **6)** Defendant No. 5: | ) | |
| **A BERETTA, MODEL 92FS, 9MM** | ) | |
| **CALIBER HANDGUN, BEARING** | ) | |
| **SERIAL NUMBER BER571510,** | ) | |
| | ) | |
| **Defendant.** | ) | |

<u>**VERIFIED COMPLAINT FOR FORFEITURE *IN REM***</u>

The United States of America brings this Complaint and, in accordance with

Supplemental Rule G(2) of the Federal Rules of Civil Procedure, alleges the following:

## NATURE OF THE ACTION AND BASIS FOR FORFEITURE

1.      Plaintiff, United States of America, alleges for this *in rem* forfeiture action brought against 950 SW 59th Street, Oklahoma City, Oklahoma 73109 ("**Defendant Property 1**") that **Defendant Property 1** is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(7) because it is real property used or intended to be used to facilitate the commission of criminal activity, specifically for violations of 21 U.S.C. §§ 841(a)(1) (manufacture and distribution of drugs) and 846 (drug conspiracy).

2.      Title 21, United States Code, Section 881(a)(7) provides the following shall be subject to forfeiture to the United States and no property right shall exist in them:

> All real property, including any right, title, and interest (including any leasehold interest) in the whole of any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this subchapter.

3.      Title 21, United States Code, Section 841 makes it a crime for any person to knowingly manufacture a controlled substance or to possess a controlled substance with intent to distribute that controlled substance.

4.      Title 21, United States Code, Section 846 makes it a crime to conspire to violate a provision of Title 21, that is, Section 846 provides that any person who attempts or conspires to commit any offense defined in that subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.  Specifically, Section 846 prohibits a person from conspiring to manufacture a controlled substance or to possess a controlled substance with intent to distribute that controlled substance.

5.      Plaintiff, United States of America, alleges for this *in rem* forfeiture action brought against approximately $20,161.00 in United States currency ("**Defendant Property 2**") that **Defendant Property 2** is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6), for violations of 21 U.S.C. §§ 841(a)(1) and 846.

6.      **Defendant Property 2** is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6) because it constitutes:

    a.      money furnished or intended to be furnished by a person in exchange for a controlled substance in violation of the Controlled Substances Act;

    b.      proceeds traceable to such an exchange; or

    c.      money used or intended to be used to facilitate a violation of the Controlled Substances Act.

*See* 21 U.S.C. §§ 846 and 841(a)(1).

7.      Plaintiff, United States of America, alleges for this *in rem* forfeiture action brought against:

    a.      a Sig Sauer, model P365, 9mm caliber handgun, bearing serial number 66B194635 ("**Defendant Property 3**");

    b.      a Springfield, model XD9, 9mm caliber handgun, bearing serial number MG937535 ("**Defendant Property 4**"); and

    c.      a Beretta, model 92FS. 9mm caliber handgun, bearing serial number BER571510 ("**Defendant Property 5**"),

that **Defendant Properties 3, 4, and 5** are subject to forfeiture pursuant to 21 U.S.C. § 881(a)(11), for violations of 21 U.S.C. §§ 841(a)(1) and 846.

8.      **Defendant Properties 3, 4, and 5** are subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(11) because they are firearms "used or intended to

be used to facilitate the transportation, sale, receipt, possession, or concealment of property described in paragraph (1) or (2) and any proceeds traceable to such property." *See* 21 U.S.C. §§ 846 and 841(a)(1).

## THE DEFENDANT PROPERTIES *IN REM*

9.     **Defendant Property 1** is real property known and numbered as 950 SW 59th Street, Oklahoma City, Oklahoma 73109, with all appurtenances, improvements, and attachments thereon, more particularly described as:

> Lots Twenty-three (23) and Twenty-four (24) and the West 9.7 feet of Lot Twenty-two (22), in Block One (1), of HUDSON PARK ADDITION to the City, Oklahoma City, Oklahoma County, Oklahoma, as shown by recorded plat thereof.

10.     **Defendant Property 1**, known as "La Cantina Bar" is subject to forfeiture to the United States because it is real property used or intended to be used to facilitate the commission of criminal activity including drug conspiracy and the distribution of drugs. *See* 21 U.S.C. §§ 846, 841(a)(1), and 881(a)(7).

11.     **Defendant Property 1** has not been seized but is located in the Western District of Oklahoma and is within the jurisdiction of the Court.

12.     **Defendant Property 2** consists of $20,161.00 in United States currency seized on January 23, 2025, during the execution of a search warrant at the residence of the owners of **Defendant Property 1** by law enforcement officers who determined that there was probable cause to believe that **Defendant Property 2** constitutes:

> a.     money furnished or intended to be furnished by a person in exchange for a controlled substance in violation of the Controlled Substances Act;

4

b.      proceeds traceable to such an exchange; or

c.      money used or intended to be used to facilitate violation of the Controlled Substances Act, specifically 21 U.S.C. §§ 846 and 841(a)(1).

*See* 21 U.S.C. §§ 846, 841(a)(1), and 881(a)(6).

13.      **Defendant Property 2** was taken into custody by law enforcement officers and remains in the custody of the United States, within the Western District of Oklahoma.

14.      **Defendant Property 3** is a Sig Sauer, model P365, 9mm caliber handgun, bearing serial number 66B194635, seized on January 23, 2025, during the execution of a search warrant at **Defendant Property 1** by law enforcement officers who determined that there was probable cause to believe that **Defendant Property 3** constitutes a firearm used or intended to be used or intended to be used to facilitate the transportation, sale, receipt, possession, or concealment of controlled substances and any proceeds traceable to such property.  *See* 21 U.S.C. §§ 846, 841(a)(1), and 881(a)(11).

15.      **Defendant Property 3** was taken into custody by law enforcement officers and remains in the custody of the United States, within the Western District of Oklahoma.

16.      **Defendant Property 4** is a Springfield, model XD9, 9mm caliber handgun, bearing serial number MG937535, seized on January 23, 2025, during the execution of a search warrant at **Defendant Property 1** by law enforcement officers who determined that there was probable cause to believe that **Defendant Property 4** constitutes a firearm used or intended to be used or intended to be used to facilitate the transportation, sale, receipt, possession, or concealment of controlled substances and any proceeds traceable to such property.  *See id.*

17.     **Defendant Property 4** was taken into custody by law enforcement officers and remains in the custody of the United States, within the Western District of Oklahoma.

18.     **Defendant Property 5** is a Beretta, model 92FS, 9mm caliber handgun, bearing serial number BER571510, seized on January 23, 2025, during the execution of a search warrant at **Defendant Property 1** by law enforcement officers who determined that there was probable cause to believe that **Defendant Property 5** constitutes a firearm used or intended to be used or intended to be used to facilitate the transportation, sale, receipt, possession, or concealment of controlled substances and any proceeds traceable to such property. *See id.*

19.     **Defendant Property 5** was taken into custody by law enforcement officers and remains in the custody of the United States, within the Western District of Oklahoma.

20.     As set forth in Supplemental Rule G(3)(b)(i), the Clerk of Court must issue a warrant to arrest the **Defendant Properties 2, 3, 4 and 5** if they are in the Government's possession, custody, or control.

**JURISDICTION AND VENUE**

21.     Plaintiff brings this action *in rem* to forfeit and condemn the **Defendant Properties 1, 2, 3, 4, and 5** (together, "**Defendant Properties**").

22.     This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345, and the Court has jurisdiction over a civil forfeiture action under 28 U.S.C. § 1355(a).

23.     This Court has *in rem* jurisdiction over the **Defendant Properties** according to 28 U.S.C. § 1355(b), providing that a forfeiture action or proceeding may be brought in the district in which any of the acts or omissions giving rise to the forfeiture occurred.

24.     Venue is proper in this district pursuant to 21 U.S.C. § 881(j) and 28 U.S.C. § 1355(b)(1) because the acts or omissions giving rise to the forfeiture occurred in this district.

25.     Furthermore, venue for the **Defendant Properties** is also proper here pursuant to 28 U.S.C. § 1395, because the **Defendant Properties** are located in this district.

## **FACTS**

26.     The facts and circumstances supporting the forfeiture of **Defendant Properties** have been provided by multiple law enforcement sources and verified by FBI Special Agent Sam E. Spencer.  *See* Exhibit 1, *Verification*.

27.     **Defendant Property 1,** real property identified and numbered as 950 SW 59th Street, Oklahoma City, Oklahoma 73109, is the site of a business known as La Cantina Bar.

28.     The business known as La Cantina Bar is owned by La Cantina Bar, LLC.

29.     La Cantina Bar, LLC, is a domestic limited liability company that was formed via the filing of Articles of Organization with the Oklahoma Secretary of State on May 23, 2018, with Enedina M. Ramirez ("Ramirez") identified as its registered agent and point of contact at 936 NW 30 Court, Moore, Oklahoma 73160.  *See* Exhibit 2, *Articles of Organization.*

30. Investigators identified the registered address of the LLC, 936 NW 30 Court, Moore, Oklahoma 73160 ("Ramirez-Atilano Residence"), as a property leased by Ramirez and her spouse Abisai Atilano Garcia ("Atilano").

31. Restaurants and bars operating in Oklahoma are required under state law to obtain and maintain licensure through the Oklahoma Alcoholic Beverage Law Enforcement ("ABLE") Commission, which requires compliance with, *inter alia*, the relevant provisions of Title 37A of the Oklahoma state statutes. *See* Okla. Stat. Ann. tit. 37A, § 2-110.

32. La Cantina Bar, LLC, first received a mixed beverage license (MXB-817535) through the ABLE Commission on November 16, 2018.

33. Atilano was employed as a bar manager at La Cantina Bar while the business was in operation and law enforcement observed both his and Ramirez's regular physical presence at **Defendant Property 1** throughout the investigation.

34. In the latter half of 2024, law enforcement opened an investigation into La Cantina Bar, LLC, operating at **Defendant Property 1**, after receiving information from confidential sources who advised that cocaine was being sold there.

35. Law enforcement began conducting surveillance at and around **Defendant Property 1**, during which they observed an individual identified as Lucio Rocha Juarez, Sr., ("Juarez") visit **Defendant Property 1** almost daily, and sometimes multiple times in a day.

36. A cooperating defendant ("CD1") identified Juarez as a cocaine supplier operating at **Defendant Property 1**.

37.     Law enforcement observed that Juarez would typically arrive at **Defendant Property 1** in the early afternoon when the bar opened for business.

38.     Based upon their training and experience, investigators surmised that Juarez arrived at **Defendant Property 1** at this time to deliver cocaine for further distribution throughout the day.

39.     In the early afternoon of September 5, 2024, shortly after observing him make a brief stop at a suspected stash house in south Oklahoma City, law enforcement conducted a traffic stop on a vehicle driven by Juarez near **Defendant Property 1** as he appeared to be headed there, resulting in the seizure of 261 grams of a substance that field tested positive for cocaine.

40.     Later in 2024, in September and October, a confidential human source ("CS1"), purchased cocaine multiple times in the bathroom of **Defendant Property 1** from another individual, later identified as Ramon Zuniga Magdaleno, also known as Chikilin ("Zuniga").[1]

41.     Around this time, law enforcement received information from a second confidential human source ("CS2"), who identified Cesar Ibarra Gomez ("Gomez") as yet another individual involved in cocaine distribution at **Defendant Property 1.**

---

[1]     CS1 was surveilled and equipped with a recording device during the controlled buys of cocaine from Zuniga at **Defendant Property 1**.  The substances purchased by CS1 yielded a positive result for cocaine when field tested.

42. On December 3, 2024, law enforcement executed a search warrant at Gomez's residence, during which they seized approximately 730 grams of a substance that field tested positive for cocaine.

43. On December 19, 2024, law enforcement executed a search warrant at Zuniga's residence, during which they seized approximately 1151 grams of a substance that field tested positive for cocaine.

44. Multiple La Cantina Bar patrons and known associates of Ramirez and Atilano have been convicted of drug offenses related to their illegal activities at **Defendant Property 1**. *See United States v. Ibarra Gomez*, CR-24-520-PRW (W.D. Okla.); *United States v. Zuniga Magdaleno*, CR-25-004-PRW (W.D. Okla., Dec. 19, 2024); *United States v. Rocha Juarez,* CR-24-399-PRW-1 (W.D. Okla.); *United States v. Juarez Zavala,* CR-24-399-PRW-2 (W.D. Okla.).

45. Throughout the investigation, cooperators advised that Atilano was aware of the cocaine distribution taking place at **Defendant Property 1** and that he frequently took possession of and transported the proceeds of drug sales.

46. Law enforcement observed Atilano traveling to and from **Defendant Property 1** and the Ramirez-Atilano Residence multiple times per day.

47. Cooperators also advised that Atilano stored and distributed cocaine from the Ramirez-Atilano Residence during the course of the investigation.

48. On January 21, 2025, a federal grand jury returned an indictment in the Western District of Oklahoma charging Atilano with participation in a drug conspiracy, in violation of 21 U.S.C. § 846, and with maintaining a drug-involved premises, specifically

**Defendant Property 1,** in violation of 21 U.S.C. § 856(b), both from in or about June 2024, through on or about the date that charges were filed. *See United States v. Atilano Garcia*, CR-25-026-PRW, Doc. 1 (W.D. Okla., Jan. 21, 2025).

49.     The indictment also included an allegation seeking criminal forfeiture of "any property constituting or derived from any proceeds obtained directly or indirectly as a result of such offense(s), and any property used, or intended to be used, in any manner or part, to commit or to facilitate the commission of such offense(s)," pursuant to 21 U.S.C. § 853, specifically identifying **Defendant Property 1** as subject to forfeiture. *See id.*

50.     On January 23, 2025, law enforcement executed search warrants at both **Defendant Property 1** (*see In the Matter of the Search of Premises Known as the La Cantina, 950 SW 59th Street, Oklahoma City, Oklahoma 73179, Including Any Curtilage Associated with the La Cantina Business*, MJ-25-042-STE (W.D. Okla., Jan. 21, 2025)) and the Ramirez-Atilano Residence (*see In the Matter of the Search of Premises Known as 936 NW 30th Court, Moore, Oklahoma 73160 and the Surrounding Curtilage, Any Vehicles, Garages, and Outbuildings Thereon*, MJ-25-041-STE (W.D. Okla., Jan. 21, 2025)).

51.     During the execution of the search warrant at the Ramirez-Atilano Residence, law enforcement seized approximately $20,161.00 in United States currency (**Defendant Property 2**), which investigators believe to be drug proceeds, as well as three firearms (**Defendant Property 3, 4, and 5**), which based upon their training and experience, investigators identified as firearms used or intended to be used or intended to

11

be used to facilitate the transportation, sale, receipt, possession, or concealment of controlled substances and any proceeds traceable to such property.

52.     During the execution of the search warrants, investigators advised both Ramirez and Atilano that law enforcement was aware of drug distribution taking place at **Defendant Property 1.**

53.     Also on January 23, 2025, Atilano was arrested pursuant to the warrant issued upon the return of the indictment and appeared for arraignment before the Court, at which time he was advised of the nature of his charges.  *See United States v. Atilano Garcia*, CR-25-026-PRW, Docs. 6–13 (W.D. Okla., Jan. 23, 2025).

54.     On February 3, 2025, the Government filed a Notice of *Lis Pendens* with the Office of the Oklahoma County Clerk, giving public notice of Atilano's indictment (*see id.*), and advising that "[t]he action includes a forfeiture allegation in which the United States seeks forfeiture of [**Defendant Property 1**] pursuant to 21 U.S.C. § 853 for violations of 21 U.S.C. §§ 846 and 865(a)(1)."  *See* Exhibit 3, *Notice of Lis Pendens*.

55.     Due to suspected liquor license violations, on February 27, 2025, ABLE Commission agents, supported by Oklahoma City Police Department ("OCPD") officers and Federal Bureau of Investigation ("FBI") and Immigration and Customs Enforcement ("ICE") agents, conducted a compliance check at **Defendant Property 1**.

56.     During the compliance check, in addition to confirmation of multiple violations of Oklahoma state law governing the sale of alcohol, law enforcement seized multiple small baggies of cocaine packaged in baggies that closely resembled those that had been previously sold to CS1 at **Defendant Property 1.**

57. Specifically, law enforcement seized two plastic baggies containing a total of approximately 40 smaller zip-top baggies containing approximately 29 grams of a substance that field-tested positive for cocaine, which were located on the bar top/high top near the pool tables within **Defendant Property 1** at the time of their arrival.

58. As a result, ABLE agents issued La Cantina Bar, LLC, multiple citations on February 27, 2025, including one (ABLE Citation No. 45027) for permitting criminal conduct on premises, in violation of Okla. Stat. Ann. tit. 37A, § 6-109.[2] *See* Exhibit 4, *February Citation.*

59. This citation was issued to La Cantina Bar, LLC, and includes the legally registered business address for the entity, the Ramirez-Atilano Residence. *See id.*

60. In spite of prior law enforcement action, in May 2025, investigators received information from a third confidential human source ("CS3") that cocaine distribution was *still* occurring at **Defendant Property 1.**

61. On May 9, 2025, law enforcement utilized CS3 to conduct a controlled purchase of cocaine from an individual at **Defendant Property 1**.[3]

62. Later the same day, law enforcement executed a search warrant at **Defendant Property 1**, during which they *again* recovered multiple small baggies of a substance that

---

[2]   "No mixed beverage, beer and wine, bottle club, caterer, charitable event, public event or special event licensee or any employee, manager, operator or agent thereof shall permit any illegal gambling activity, violations of the state narcotic and dangerous drug laws, prostitution activity or any other criminal conduct to occur on the licensed premises." Okla. Stat. Ann. tit. 37A, § 6-109 (West).

[3]   The substance purchased during the controlled buy yielded a positive result for cocaine when field tested.

field-tested positive for cocaine that closely resembled those previously purchased during controlled drug buys discussed *supra*.[4]

63.    ABLE agents issued La Cantina Bar, LLC, multiple citations on May 9, 2025, including another (ABLE Citation No. 46123) for permitting criminal conduct on premises, in violation of Okla. Stat. Ann. tit. 37A, § 6-109. *See* Exhibit 5, *May Citation*.

64.    This citation was issued to La Cantina Bar, LLC, and includes the legally registered business address for the entity, the Ramirez-Atilano Residence. *See id.*

65.    On June 6, 2025, the ABLE Commission filed an Order of Summary Suspension and Notice of Contemplated Revocation ("Order") against La Cantina Bar's mixed beverage license, outlining the criminal activity described *supra* and citing the numerous violations giving rise to ABLE's administrative action. *See* Exhibit 6, *Order*.

66.    The Order specifically references the circumstances giving rise to the issuance of ABLE Citations No. 45027 and 46123, both issued for permitting criminal conduct on premises. *Id.* at 3, 5.

67.    Within the Order, ABLE alleged, *inter alia*, that Ramirez was the registered agent and point of contact for the bar, that "by and through her spouse and employee, Abisai Atilano Garcia, who acts as bar manager, [Ramirez] allows and benefits from the activity of the illegal sale of narcotics from their home and business." *Id*. at 2.

68.    In a section titled "Order of the Director," the Order notes that "Respondent has been cited for multiple major violations of the ABC Act and is under investigation by

---

4    The substance purchased during the controlled buy yielded a positive result for cocaine when field tested.

multiple law enforcement agencies, with operations and arrests dating back as far as September 2024, for permitting or facilitating the sale of illegal narcotics," continuing that "Respondent allows their licensed premises to be used to facilitate these sales in plain view of the patrons inside." *Id.* at 7.

69.    The Order continues:

> Respondent has clearly demonstrated the complacency of the business concerning unlawful activity and their lack of concern for the "safety and welfare" of the public by continued and persistent violations of the OK ABC Act, state and federal narcotics laws, and other Oklahoma drug and gun laws, which when not followed, in and of themselves, present a significant danger to public safety and welfare. Based upon this pattern of criminal conduct, the ABLE Commission finds that the facts of these cases clearly demonstrate, by a preponderance of the evidence, the danger to public safety and welfare which is on-going and persistent, and requires emergency action.

*Id.*

70.    As a result, it was "therefore the order of the Director [of the ABLE Commission] that an emergency exists pursuant to 37A O.S., § 2-148(I), Oklahoma Administrative Code 45:10-5-2, and 75 O.S., § 314 and an Order of Summary Suspension [was] imposed," through which La Cantina Bar was "prohibited from the sale of alcoholic beverages pending final hearing" on June 30, 2025. *Id.* at 8.

71.    The Order includes a Certificate of Delivery dated June 6, 2025, averring that a true and correct copy of the Order was provided to Ramirez and to counsel for La Cantina Bar, LLC. *See id.* at 10.

72.    On June 18, 2025, La Cantina, LLC, with aid of counsel, settled with ABLE, voluntarily agreeing to "surrender[] their license in lieu of paying a monetary fine," and

"attest[ing] that this agreement was entered into knowingly, intelligently, and voluntarily."

*See* Exhibit 7, *Settlement Agreement*.[5]

73.     At the time of the filing of both the Order and the Settlement Agreement, Ramirez remained the registered agent for La Cantina Bar, LLC.

74.     Relevantly, the terms of the Settlement Agreement include, *inter alia*,[6] admission by the Respondent of "one major violation of 37A O.S.§6-109(4) (allowing illegal activity), committed on February 27, 2025, identified as Administrative Citation 45027" and "one major violation of 37A O.S.§6-109(4) (allowing illegal activity), committed on May 9, 2025, identified as Administrative Citation 46123." *See id.; see also* Ex. 2; *see also* Ex. 3.

75.     The Settlement Agreement was filed on June 28, 2025. *Id.*

76.     La Cantina Bar, LLC, filed Articles of Dissolution with the Oklahoma Secretary of State as to La Cantina, LLC, on July 3, 2025. *See* Exhibit 8, *Articles of Dissolution.*

77.     On March 5, 2026, Atilano entered a plea of guilty to aiding and abetting the distribution of cocaine, in violation of 21 U.S.C. § 841(a)(1), as alleged in a second

---

[5]     The Settlement Agreement concludes with an agreement by the parties as to the surrender of La Cantina Bar's mixed beverage license and a declaration that "Respondent, Enedina Ramirez or any other member of the La Cantina Bar LLC, shall not be eligible to hold any ABLE license for a period of one year from the execution of this settlement agreement." Ex. 4 at 2.

[6]     The Settlement Agreement also includes within its terms admissions by Respondent La Cantina Bar of 49 major violations for purchasing alcohol from other than a wholesaler and a violation of the ABC Act and three minor violations including failure to maintain records, possession of alcohol not on invoice, and allowing empty AB container in public. *Id.* at 1.

superseding information.  *See United States v. Atilano Garcia*, CR-25-026-PRW, Docs. 58–64 (W.D. Okla., Mar. 5, 2026).

78.    Pursuant to his plea agreement, Atilano voluntarily agreed "to abandon any and all right, title, interest, and claim, if any, in the following asset(s):

a.    real property located at 944 SW 59th Street, Oklahoma City, Oklahoma 73159, legally described as Lots Twenty-three (23) and Twenty-four (24) and the West 9.7 feet of Lot Twenty-two (22), in Block One (1), of HUDSON PARK ADDITION to the City, Oklahoma City, Oklahoma County, Oklahoma, as shown by recorded plat thereof [**Defendant Property 1**];

b.    approximately $20,161.00 in U.S. Currency[7] [**Defendant Property 2**];

c.    approximately $7,500.00 in Cash Saver gift cards;

d.    a Sig Sauer, model P365, 9mm caliber handgun, bearing serial number 66B194635 [**Defendant Property 3**];

e.    a Springfield, model XD9, 9mm caliber handgun, bearing serial number MG937535 [**Defendant Property 4**];

f.    a Beretta, model 92FS, 9mm caliber handgun, bearing serial number BER571510 [**Defendant Property 5**]; and

g.    any and all ammunition and magazines not specified herein.

*Id.* at Doc. 63 at 7.

79.    Additionally, Atilano "agree[d] not to contest the vesting of title of this property in the United States" and "further agree[d] not to assist others in filing a claim in an abandonment proceeding or otherwise assist others who challenge an abandonment

---

[7]    **Defendant Property 2** was identified as approximately $19,361.00 in U.S. Currency in the original document but the corrected amount -- $20,161.00 – was interlineated and initialed by the parties prior to the commencement of Atilano's waive and file hearing. *Id.*

action involving the above-listed property or property involved in the underlying criminal conduct." *Id.*, Doc. 63 at 7–8 (W.D. Okla., Mar. 5, 2026).

80. On June 22, 2026, Ramirez filed an Ancillary Petition and Claim for Property Subject to Preliminary Order of Forfeiture, asserting an interest in **Defendant Property 1**; $19,361 in U.S. Currency,[8] **Defendant Property 3**, and **Defendant Property 5.** *Id.*, Doc. 69 at 1 (W.D. Okla., June 22, 2026).

81. In her Petition, Ramirez acknowledges that Atilano was charged with and pleaded guilty to Abetting the Distribution of Cocaine (*id.* at 3), but "attest[s] and declare[s] under penalty of perjury pursuant to 28 U.S.C. Section 1746" (*id.* at 5) that she "was never charged with, investigated for, or convicted of any criminal offense related to [Atilano]'s conduct" and that she "had no involvement in, *knowledge of*, or participation in the criminal activity underlying [Atilano]'s conviction" (*id.* at 3).

82. Seven days later, Ramirez filed an Amended Ancillary Petition and Claim for Property Subject to Preliminary Order of Forfeiture, asserting an interest in **Defendant Properties 2** and **5**, but abandoning her previous claim to **Defendant Properties 1** and **3**. *Id.,* Doc. 72 (W.D. Okla., June 29, 2026).

83. Although in Ramirez's original Petition, she claims under penalty of perjury to be the "sole and exclusive owner" of **Defendant Property 1**, and "asserts lawful ownership and/or possessory interests" in **Defendant Property 3**, Leonardo Ramos ("Ramos"), whom investigators have identified as Ramirez's son, filed an Ancillary

---

[8] Ramirez appears to claim Defendant Property 2 here but identifies the incorrect amount as reflected in the original draft of Atilano's plea agreement.

Petition and Claim for Property Subject to Preliminary Order of Forfeiture, asserting an interest in both assets, also under penalty of perjury.  *Id.,* Doc. 71 (W.D. Okla., June 29, 2026).

84.    In his Petition, Ramos claims to be the sole and exclusive owner of **Defendant Property 1** after that Ramirez "conveyed and deeded" it to him on or about July 3, 2025 (*id.* at 2) – exactly four months *after* the United States filed a Notice of *Lis Pendens* with the Office of the Oklahoma County Clerk, giving public notice of Atilano's indictment (*see id.*), and advising that "[t]he action includes a forfeiture allegation in which the United States seeks forfeiture of [**Defendant Property 1**] pursuant to 21 U.S.C. § 853 for violations of 21 U.S.C. §§ 846 and 865(a)(1)" (*see* Ex. 2).

## CLAIM FOR RELIEF

85.    Plaintiff re-alleges each and every allegation set forth above.

86.    As required by Supplemental Rule G(2)(f), the facts set forth herein support a reasonable belief that the Government will be able to meet its burden of proof at trial.

87.    Specifically, probable cause exists that the **Defendant Property 1** was used to facilitate the manufacture and distribution of cocaine, a Schedule II controlled substance, and conspiracy to do the same, in violation of 21 U.S.C. §§ 841(a) and 846, within the Western District of Oklahoma.

88.    As a result of the foregoing, the **Defendant Property 1** is liable to condemnation and to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(7).

89.    The United States does not request authority from the Court to seize **Defendant Property 1** at this time; instead the United States will, as provided by 18 U.S.C. § 985(c)(1):

a.    post notice of this action and a copy of the Complaint on the defendant real property; and

b.    serve notice of this action on the defendant real property owner(s) and any other person or entity who may claim an interest in the defendant real property, along with a copy of this Complaint; and

c.    request and execute a writ of entry for purposes of conducting an inspection and inventory of the defendant real property; and

d.    file *lis pendens* in county record of the defendant real property status as the defendant in this *in rem* action.

90.    The United States will appraise the **Defendant Property 1** when it executes the Writs of Entry.

91.    Further, probable cause exists to believe that **Defendant Property 2** constitutes:

a.    money furnished or intended to be furnished by a person in exchange for a controlled substance in violation of the Controlled Substances Act;

b.    proceeds traceable to such an exchange; or

c.    money used or intended to be used to facilitate violation of the Controlled Substances Act, specifically 21 U.S.C. §§ 846 and 841(a)(1),

and is therefore subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6).

92.    Finally, probable cause exists to believe that **Defendant Properties 3, 4, and 5** are firearms used or intended to be used or intended to be used to facilitate the

transportation, sale, receipt, possession, or concealment of controlled substances and any proceeds traceable to such property and are therefore subject to forfeiture pursuant to 21 U.S.C. § 881(a)(11).

**PRAYER FOR RELIEF**

93.     WHEREFORE, pursuant to Supplemental Rule G, Plaintiff respectfully requests that process of forfeiture be issued against the **Defendant Properties**; that the Court issue a Writ of Entry at a later date for the **Defendant Property 1**; that due notice of this action be given to all interested parties to appear and show cause why the forfeiture of the **Defendant Properties** should not be decreed; that the **Defendant Properties** be forfeited and condemned to the United States for disposition according to law; that Plaintiff be awarded its costs and disbursements in this action; and that the Court order any such other and further relief as this Court deems proper and just.

Respectfully submitted,

ROBERT J. TROESTER
United States Attorney

s/ Danielle M. Connolly
DANIELLE M. CONNOLLY
Assistant United States Attorney
Oklahoma Bar Number: 33148
210 Park Avenue, Suite 400
Oklahoma City, Oklahoma 73102
Office: (405) 553-8700
Fax: (405) 553-8888
danielle.connolly@usdoj.gov